Lee MARTIN, et ux, Respondent,

v.

Kent McEVERS, Appellant.

No. WD 60930.

Missouri Court of Appeals,
Western District.

April 29, 2003.

Stephen C. Caruso, Kansas City, for appellant.

James Michael Riehn, Cassville, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

Kent McEvers appeals the judgment of the trial court in favor of Lee and Debi Martin on their claim for equitable contribution. McEvers and the Martins were co-guarantors of a debt owed by a company in which they were formerly officers and stockholders. McEvers contends that the trial court erred in its judgment on the grounds that he was either not bound to his obligations as a guarantor or that the Martins' claim was barred due to unclean hands. We find no error and affirm.

## Background

Kent McEvers was a stockholder and officer of Independent Communication Systems, Inc. (ICS). Lee and Debi Martin were also officers and stockholders of the corporation.

The present dispute concerns McEvers' liability to guarantee certain debts of ICS. Over his term with ICS, McEvers signed a number of guarantees of corporate debts, some of which were signed by McEvers personally while others were apparently executed using a signature stamp. There was testimony presented that the signature stamp had been created because McEvers was frequently out of the office on service calls and was unable to sign letters, correspondence, or other items. That testimony also stated that McEvers had authorized the use of the stamp on loan paperwork to be submitted to the bank.

Only two guaranty forms were offered into evidence at trial, one dated August 31, 1995, and the other dated August 15, 1996. Both were signed using McEvers' signature stamp. Those guaranties were unconditional and unlimited in nature. They were not expressly tied or limited to specific loans or other forms of indebtedness. While McEvers admitted to signing guaranties before 1995, he contended that he did not authorize the placing of his signature stamp on either the 1995 or the 1996 guaranty. It is undisputed, however, that McEvers never contacted the lender to revoke his obligations under any guaranty, including those executed prior to 1995.

On the date the last guarantee was executed, McEvers argued with the Martins and ultimately left the office. There was a dispute in the testimony whether it was clear that McEvers was actually leaving the company at that point. The Martins contended that it was not clear if he was leaving for good, while McEvers presented testimony that he told the Martins that he was ending his relationship with the company.

ICS entered into a number of promissory notes from 1995 through 1998. ICS ultimately defaulted on those notes, and the lender sought to recover from the guarantors. The Martins satisfied those outstanding debts, and brought suit against McEvers under an equitable contribution theory, seeking to recover his

share of the debt under his unrevoked obligation as guarantor to those debts. The trial court, trying the case without a jury, granted judgment in favor of the Martins in the amount of $9,183.85, leading to the present appeal.

## Discussion

■ The applicable standard of review is provided by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment below unless it is not supported by substantial evidence, it is against the weight of the evidence, or it incorrectly declares or applies the law. *Id.* For at least one of his points on appeal, McEvers contends that the trial court's judgment was against the weight of the evidence. In addressing such claims, our review is quite limited:

> This court exercises great caution in setting aside a judgment in such cases on the ground that it is against the weight of the evidence, and only then with a firm belief that the judgment below was wrong, realizing that the trial court is in a much better position than is this court to judge the credibility of the witnesses and to determine the weight to be given to their testimony. Thus, this court gives to the prevailing party the benefit of all favorable evidence and reasonable inferences to be drawn therefrom, disregarding all evidence to the contrary. Additionally, the trial court is given deference even if the evidence could support a different conclusion.

*King v. King*, 793 S.W.2d 200, 202 (Mo. App.1990) (internal citations omitted). In most of his remaining points, McEvers contends that the trial court misapplied the law. We review such issues of law independently, and need not defer to the trial court. *Lake Cable v. Trittler*, 914 S.W.2d 431, 434 (Mo.App.1996).

For the first of his four points on appeal, McEvers claims that the trial court's judgment is against the weight of the evidence on the issue of whether he had authorized the use of his signature stamp on the loan guaranty documents executed in 1995 and 1996.

■ Both of the Martins testified that McEvers had authorized that use, and that Lee Martin discussed each loan with McEvers prior to the use of the stamp. While McEvers presented contrary testimony, it appears that the trial court did not find that testimony to be credible. While there was some evidence in the record upon which the trial court could have concluded differently, "[e]vidence in the record which might have supported a different conclusion does not necessarily demonstrate that the trial court's judgment is against the weight of the evidence." *In the Interest of A.M.W.*, 64 S.W.3d 899, 904 (Mo.App.2002). Here, the weight of the evidence does not conclusively favor McEvers' contention. Therefore, we must defer to the trial court's findings on this point. Point denied.

■ In his second point on appeal, McEvers contends that the Martins' claim, premised upon the theory of equitable contribution, was barred due to the "clean hands" doctrine. McEvers cites no authority in support of this point on appeal, except a general citation to *Bovard v. Bovard*, 352 Mo. 953, 180 S.W.2d 592 (1944), for the general proposition that one must come to court with "clean hands" to obtain equitable relief.

While McEvers contends that this point turns upon the trial court's erroneous application of the law, the specific issues raised by him rest upon determinations of fact made by the trial court. McEvers argues that the Martins' misconduct consisted of placing his signature stamp on the loan guaranty without authorization

and submitting the guaranty to the bank on the date he allegedly left the company.

As stated in the previous point, there was a conflict in the evidence regarding whether McEvers' stamped signatures on the 1995 and 1996 guaranty forms were authorized. The trial court's judgment implies that the trial court found the Martins' testimony to be more credible on the issue, and that finding was not against the weight of the evidence. Given that Debi Martin was authorized to place McEvers' stamped signature on the guaranty forms, she does not have "unclean hands."

With regard to the other issue, concerning the timing of the 1996 guaranty relative to his departure from the business, there was also disputed evidence. There was conflicting testimony provided as to whether it was clear, at the time that the guaranty was executed, that McEvers was leaving the company. Ultimately, however, that issue is moot, as the 1995 guaranty would cover the 1996 note and any subsequent notes, as McEvers never advised the lender that he was revoking his prior guaranty. This specific issue will be addressed in greater detail with regard to McEver's next point on appeal.

McEvers has failed to establish that the Martins had "unclean hands" which barred their equitable contribution claim. His second point on appeal is, therefore, denied.

■ In his third point on appeal, McEvers contends that the trial court erred because the alteration of the loan terms without his consent released him from his guarantor obligations as a matter of law. He relies upon a series of cases in which guarantors were released from their obligations due to alterations in the terms of the underlying indebtedness, including: *Citizens Bank of Smithville v. Lair*, 687 S.W.2d 268 (Mo.App.1985); *Eberly v. Lehmer*, 48 S.W.2d 151 (Mo.App.1932); and *Beauchamp v. North American Savings Association*, 543 S.W.2d 536 (Mo.App. 1976).

Those cases, however, involved situations where modifications to the underlying indebtedness altered the guarantor's obligations in a manner that the language of the guaranty did not permit. McEvers fails to show how the indebtedness at issue here modified his obligations under the guaranty in an impermissible manner. The terms of the 1995 and 1996 guaranty agreements clearly state that McEvers agreed to act as surety for any new indebtedness incurred by ICS prior to the revocation of the guaranty by the guarantor, regardless of whether he had notice of the additional indebtedness. It also permitted ICS and the bank to enter into modifications of preexisting indebtedness (including extensions of repayment and modifications of interest rates) without notice.

■ Both the 1995 and 1996 guaranty forms provide that the guarantor's obligation is "open and continuing," and shall remain in force until revoked in writing by the guarantor. The terms of the guaranty extend to all debts incurred by ICS, whether created at the time of the guaranty or sometime in the future. Despite McEvers' arguments to the contrary, "[a] continuing guaranty contemplates a series of transactions between debtor and creditor, rather than a single debt." *Lemay Bank & Trust Co. v. Harper*, 810 S.W.2d 690, 692–93 (Mo.App.1991). Given that McEvers never provided written notice to the lender that he wished to revoke his guaranty, he was bound by that guaranty with regard to the notes executed by ICS, including the ones executed in 1996.

McEvers' third point on appeal is denied.

In his final point on appeal, McEvers claims that he has no liability to the Martins because he surrendered his stock in ICS. He relies upon section 351.275,

RSMo, in support of this argument. That statute, however, merely provides that a stockholder's liability to a corporation is limited to the extent, if any, the stockholder has not paid full value for the shares he or she holds.

 In the present context, section 351.275, RSMo, is irrelevant. McEvers' liability to the Martins is not premised under his status as stockholder, but instead his status as guarantor. By agreeing to act as a surety for the debts of ICS, McEvers undertook an additional obligation independent of his status as stockholder to satisfy those debts in the event of ICS' default. Because the underlying debt was satisfied by the Martins, they were entitled to seek contribution from McEvers based upon his status as co-guarantor. Point denied.

The trial court did not err in granting judgment in favor of respondents Lee and Debi Martin against appellant McEvers. The judgment of the trial court is, therefore, affirmed.

PAUL M. SPINDEN, Judge, and JAMES M. SMART, JR., Judge, concur.