CONSOLIDATED NUTRITION, L.C., AN IOWA LIMITED LIABILITY COMPANY, DOING BUSINESS AS MASTER MIX FEEDS, ASSIGNEE, APPELLEE, V. LYLE GRONE AND SANDRA GRONE, APPELLANTS.

594 N.W. 2d 668

Filed May 18, 1999.    No. A-98-012.

John V. Addison for appellants.

Christopher J. Connolly, of Olds, Pieper & Connolly, for appellee.

IRWIN, Chief Judge, and HANNON and SIEVERS, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Lyle Grone and Sandra Grone appeal the affirmance by the district court for Wayne County of the county court's judgment granting summary judgment in favor of the plaintiff, Consolidated Nutrition, L.C. (CNC), and against the Grones. On appeal, the Grones contend that their guaranty in favor of Central Soya Company, Inc. (CSC), did not cover any debt of the business known as The Feed Store, Inc.; that the guaranty was not assigned to CNC; and that even if assigned, the assignment was not permissible because the guaranty was a special guaranty for future credit. For the reasons stated below, we reverse, and remand for further proceedings consistent with this opinion.

## II. FACTUAL BACKGROUND

In June 1990, the Grones and John and Gaylene Nutzman executed a guaranty in favor of "Central Soya Company, Inc., Its subsidiaries and Affiliates" in "consideration of credit given or to be given, or other financial accommodations afforded or to be afforded to THE FEED STORE." The Grones and the Nutzmans "jointly and severally" guaranteed to CSC the "full and prompt payment . . . of any and all indebtedness, obligations, trade acceptances, and liabilities of every kind and character, whether direct or indirect, whether now existing or hereafter existing . . . growing out of or occasioned by or through the acts of the Debtor." The guaranty further provided that it was a "continuing, absolute and unconditional guaranty."

On January 28, 1994, CSC transferred the assets of its animal feed business to ADM Feed Corporation (ADM). According to the agreement, CSC sold its rights under "Contracts . . . and other agreements relating to the Business." ADM subsequently changed its name to Premiere Agri Technologies, Inc. (PAT). On November 1, 1994, PAT transferred the assets of its animal feed business to CNC. According to the agreement between PAT and CNC, PAT sold "all rights of the Transferor under all contracts . . . commitments and agreements relating to the Businesses."

From May 26 to August 2, 1994, CNC, doing business as Master Mix Feeds, provided goods to "THE FEED STORE."

After the deduction of payments received on behalf of "The Feed Store, Inc.," which included payments of $1,242.86 made by the Grones, approximately $6,549.20 remained due and owing to CNC from The Feed Store.

On December 13, 1995, CNC filed a petition in the county court for Wayne County against the Grones. As amended, the petition alleged that CNC had been assigned the guaranty executed by the Grones in favor of CSC, that The Feed Store owed CNC $6,549.20 for goods purchased by The Feed Store from CNC, and that the Grones were liable for the above debt under the terms of their guaranty. CNC prayed for judgment in the amount of $6,549.20. The Grones generally denied the allegations in the amended petition. On January 22, 1997, CNC filed a motion for summary judgment. The Grones resisted the motion. On May 2, the Grones amended their answer to counterclaim against CNC in the amount of $6,166.

A hearing was held on CNC's motion for summary judgment on August 27, 1997. CNC offered two affidavits, attached to which were the agreement between CSC and ADM and the agreement between PAT and CNC, the invoices showing the amounts due from The Feed Store to CNC doing business as Master Mix Feeds, and an accounts receivable balance report showing the unpaid balance of the account of The Feed Store. CNC also offered the Grones' answers to its request for admissions in which the Grones admitted that the guaranty attached to the amended petition was a true and correct copy of their guaranty in favor of CSC. At CNC's request, the court took judicial notice of the amended petition and the amended answer. In response, the Grones offered Lyle's affidavit, in which he generally stated that he was not provided notice of the transfer of ownership and that he was not provided proof of any debt owed by "The Feed Store Inc." to CSN covered by the guaranty. After receiving the evidence, the county court found that there were no genuine issues of fact and that CNC was entitled to judgment as a matter of law. The court entered judgment in favor of CNC and against the Grones in the amount of $6,549.20, plus interest.

Thereafter, the Grones appealed to the district court. On December 9, 1997, the district court affirmed the judgment of

the county court. Thereafter, the Grones timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Generally, the Grones assign that the district court erred in affirming the county court's granting summary judgment in favor of CNC and against the Grones. In particular, they assign and argue that the guaranty was not assigned to CNC; that even if the guaranty had been assigned to CNC, it was a special guaranty for future credit which could not be assigned; and that their guaranty only covered debts of "THE FEED STORE," not debts of "The Feed Store, Inc."

## IV. ANALYSIS

### 1. SUMMARY JUDGMENT

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Ohio Nat. Life Ins. Co. v. Rust*, 255 Neb. 372, 585 N.W.2d 438 (1998); *Marrs v. Keelan*, 254 Neb. 723, 578 N.W.2d 442 (1998). The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Deprez v. Continental Western Ins. Co.*, 255 Neb. 381, 584 N.W.2d 805 (1998); *Eiche v. Blankenau*, 253 Neb. 255, 570 N.W.2d 190 (1997).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Rust, supra*; *Marrs, supra*.

### 2. ASSIGNMENT OF GUARANTY

We address whether the evidence offered at the hearing on the motion for summary judgment establishes that the Grones' guaranty was assigned to CNC. CNC offered evidence showing as follows: The sale agreement between CSC and ADM pro-

vided for the sale of certain assets including all rights under "Contracts . . . and other agreements relating to the Business." ADM subsequently changed its name to Premiere Agri Technologies, Inc. In the sale agreement between PAT and CNC, certain assets were sold, including "all rights of the Transferor under all contracts . . . commitments and agreements relating to the Businesses." Under the provisions of the agreements set forth above, the Grones' guaranty was transferred from CSC to ADM and then from PAT to CNC. The Grones offered no evidence to contradict that the above assignments occurred. Therefore, we conclude that CNC met its burden of establishing that there was no material issue of fact regarding whether CNC had been assigned the Grones' guaranty.

### 3. ASSIGNABILITY OF GUARANTY

Next, we address whether the guaranty was assignable. The Grones argue that the guaranty was not assignable because it was a special guaranty covering future credit and that the debt which CNC sought to recover from the Grones was a debt incurred after the assignment of the guaranty. CNC argues that pursuant to the Nebraska Supreme Court's holding in *Weir v. Anthony*, 35 Neb. 396, 53 N.W. 206 (1892), the guaranty was assignable.

We note that it is undisputed that The Feed Store owed $6,549.20 to CNC for goods purchased by The Feed Store from CNC subsequent to the transfers of assets from CSC to ADM and from PAT to CNC. We further note that the guaranty executed by the Grones in favor of CNC was a special guaranty, meaning that it named as obligees certain definite persons. See 38 Am. Jur. 2d *Guaranty* § 17 (1999).

Under common law, a guaranty was not assignable. 38 Am. Jur. 2d *Guaranty* § 32. It appears that a majority of states have abrogated the common-law rule to provide that a general guaranty is assignable but that a special guaranty is generally not assignable. See *Sinclair Marketing, Inc. v. Siepert*, 107 Idaho 1000, 695 P.2d 385 (1985) (providing thorough discussion of permissibility of assignment of special guaranty). However, in *Weir, supra*, the Nebraska Supreme Court held that a special guaranty was assignable. In *Weir*, William Watson executed

three promissory notes payable to the order of the Weir Plow Company. Subsequently, S.J. Anthony executed a guaranty to Weir Plow, guaranteeing past and future debts incurred by Watson to Weir Plow. Such a guaranty would be considered a special guaranty. Weir Plow later transferred the guaranty to "W. S. Weir." Subsequently, W.S. Weir sued Anthony, pursuant to the guaranty to recover the debt owed by Watson as evidenced by the above promissory notes.

Following an unfavorable result at the trial level, Anthony contended on appeal that W.S. Weir did not have the legal capacity to sue because the guaranty was not assignable. The *Weir* court recognized that Nebraska statutes provide that an assignee may maintain an action in his or her own name and behalf without the name of the assignor. See Neb. Rev. Stat. § 25-302 (Reissue 1995). The *Weir* court therefore held that W.S. Weir was the real party of interest and could maintain the action, because "where a contract of guaranty is transferred by assignment, the assignee is vested with power to sue and recover upon it in his own name." 35 Neb. at 399, 53 N.W. at 207.

We conclude that the *Weir* holding does not apply to the case before us because the facts of *Weir, supra,* are distinguishable. In *Weir*, the assignee of the guaranty sought to recover from the guarantor debts incurred prior to the assignment of the guaranty. In the case before us, CNC, the assignee of the guaranty, seeks to recover from the Grones, as guarantors, debts incurred subsequent to the assignment of the guaranty for goods sold by CNC to The Feed Store.

Regarding the attempt of an assignee of a guaranty to collect from a guarantor debts incurred subsequent to the assignment of the guaranty, 38 Am. Jur. 2d *Guaranty* § 35 at 1033-34 (1968) provides:

> [I]f a guaranty covers future credit which is to be extended by a specified individual, it may not be transferred to another person so as to enable him to become the creditor who is secured by the guaranty. Where the person who is named as obligee has transferred his business to another, and the latter has continued to extend credit to the person for whose benefit the guaranty was executed, the guaran-

tor may be held liable for indebtedness which is shown to have been created by the extension of credit prior to the transfer, but not for indebtedness which accrued thereafter. We recognize that the above volume of American Jurisprudence has since been revised and that the above-quoted language is no longer included in the new volume. See, generally, 38 Am. Jur. 2d *Guaranty* (1999). However, the new volume provides no authority to the contrary. In support of the above propositions of law, *Kelly-Springfield Tire Co. v. Hamilton*, 230 Mo. App. 430, 91 S.W.2d 193 (1936), is cited.

In *Kelly-Springfield Tire Co., supra*, a guaranty agreement was executed by the defendant in favor of a New Jersey corporation to induce the New Jersey corporation to extend credit to a tire company. The defendant guaranteed to the New Jersey corporation full payment of past and future debts incurred by the tire company. Subsequently, the New Jersey corporation ceased operation, and a New York corporation with practically the same personnel took charge of the business. The tire company, for whose benefit the guaranty was executed, continued to purchase goods from the New York corporation and incurred debt in the amount of $706.20. The New York corporation brought an action against the defendant based upon the guaranty to recover the debt incurred by the tire company subsequent to the transfer of the business and the guaranty.

In resolving the case, the Missouri appellate court noted that the guaranty involved was a special guaranty for future credit. The court held:

> A guaranty to one person or one corporation for future credit cannot be transferred to another person or corporation so as to give the benefits of said guaranty to the assignee of the original party for the performance of obligation of the principal debtor that are directly contracted for with such assignee.
>
> The assignment of a guaranty to one person for the future credit can only assign obligations made to the original person or corporation before the assignment was made.

*Kelly-Springfield Tire Co.*, 230 Mo. App. at 433, 91 S.W.2d at 195. Because the debt sued for had accrued after the transfer

from the New Jersey corporation to the New York corporation, the court concluded that the defendant was not liable for the payment of such debt. *Kelly-Springfield Tire Co., supra.*

We apply the proposition of law set forth in 38 Am. Jur. 2d *Guaranty, supra,* § 35, and the holding in *Kelly-Springfield Tire Co., supra,* which provides that a guarantor cannot be held liable to an assignee of a guaranty for debts incurred subsequent to the assignment of the guaranty. We note that it is undisputed that the debt for which CNC seeks recovery was for goods purchased by The Feed Store from CNC and was incurred subsequent to the assignment of the guaranty. Because the debt for which CNC seeks recovery was incurred subsequent to the assignment of the guaranty, we conclude as a matter of law that the Grones are not liable for said debt. Therefore, the district court erred in affirming the judgment of the county court which granted summary judgment in favor of CNC and against the Grones.

Given our resolution of this assigned error, we need not address the remaining assigned error. We reverse, and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.